# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| | | |
|---|---|---|
| LYNNETTE M. WENZEL, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 2:13-CV-433-JEM |
| | ) | |
| CAROLYN W. COLVIN, Acting | ) | |
| Commissioner of the Social Security | ) | |
| Administration, | ) | |
|     Defendant. | ) | |

## OPINION AND ORDER

This matter is before the Court on a Complaint [DE 1], filed by Lynnette M. Wenzel on November 25, 2013, and Plaintiff's Brief in Support of Her Motion to Reverse the Decision of the Commissioner of Social Security [DE 18], filed by Plaintiff May 6, 2014. Plaintiff requests that the decision of the Administrative Law Judge be reversed and remanded for further proceedings. On August 16, 2014, the Commissioner filed a response, and on August 29, 2014, Plaintiff filed a reply. For the following reasons, the Court grants Plaintiff's request for remand.

## PROCEDURAL BACKGROUND

On November 29, 2010, Plaintiff filed an application for disability insurance benefits ("DIB") with the U.S. Social Security Administration ("SSA") alleging that she became disabled on July 1, 2009. Plaintiff's application was denied initially and upon reconsideration. On October 3, 2012, Administrative Law Judge ("ALJ") Angelita Hamilton held a hearing at which Plaintiff, with an attorney, and a vocational expert ("VE") testified. On October 29, 2012, the ALJ issued a decision finding Plaintiff was not disabled. The ALJ's decision became the Commissioner's final decision
when the Appeals Council denied Plaintiff's request for review on October 1, 2013. *See* 20 C.F.R.

§ 404.981. Under 42 U.S.C. § 405(g), Plaintiff initiated this civil action for judicial review of the Commissioner's final decision.

The ALJ made the following findings under the required five-step analysis:

1. The claimant met the insured status requirements through December 31, 2012.

2. The claimant has not engaged in substantial gainful activity since July 1, 2009, the alleged onset date.

3. The claimant has the following severe impairments: fibromyalgia; carpel tunnel syndrome of the right wrist; degenerative disc disease; nerve damage; cervical spondylosis; lumbar spondylosis; diverticulitis; and repetitive use syndrome.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.

5. The claimant has the residual functional capacity to lift and carry 10 pounds occasionally; stand/walk for 2 hours in an 8-hour workday; and sit for up to 6 hours in an 8-hour workday. She can never climb ladders, ropes, or scaffolds, but can occasionally climb ramps and stairs and occasionally balance, stoop, crouch, and crawl. She can never kneel. She can occasionally rotate her neck and occasionally bilaterally reach sideways, forward and overhead. She can only have occasional exposure to extreme temperatures, wetness and humidity. She must avoid driving and can never be exposed to hazards such as raw chemicals and solutions, moving machinery, and unprotected heights.

6. The claimant is unable to perform any past relevant work.

7. The claimant was born on April 22, 1963, and was 46 years old, which is defined as a younger individual age 45-49, on the alleged disability date.

8. The claimant has a limited education and is able to communicate in English.

9. Transferability of jobs skills is not an issue in this case because the claimant's past relevant work is unskilled.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11. The claimant has not been under a disability, as defined in the Social Security Act, from July 1, 2009 through October 29, 2012.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

## FACTS

Plaintiff was 46 years old at the alleged on-set of disability, and 49 years six months when the ALJ's decision was issued. Plaintiff suffers from fibromyalgia, carpel tunnel syndrome, degenerative disc disease, nerve damage, cervical spondylosis, lumbar spondylosis, diverticulitis, and repetitive use syndrome. In 2009, Plaintiff was treated by Dr. Mark DeHaan for her carpel tunnel syndrome, which included surgery on her right wrist. In 2012, Plaintiff started treatment with Dr. Aleksander Skarzynski. Dr. Skarzynski opined that Plaintiff's fibromyalgia, degenerative disc disease, irritable bowel syndrome, anxiety, and carpel tunnel syndrome created multiple restrictions on Plaintiff's ability to work.

At the hearing, the VE testified at the hearing that a hypothetical individual with the adopted RFC could perform the jobs of surveillance system monitor, telephone information clerk/receptionist or gate guard. The Dictionary of Occupational Titles ("DOT") listed telephone clerk as semi-skilled. In addition, the DOT listed the gate guard as both semi-skilled and light in exertion. The VE testified that in his experience sedentary unskilled versions of these jobs were available.

## STANDARD OF REVIEW

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse

only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). "[I]f the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

At a minimum, an ALJ must articulate her analysis of the evidence in order to allow the reviewing court to trace the path of her reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). An ALJ must

4

"'build an accurate and logical bridge from the evidence to [the] conclusion' so that, as a reviewing court, we may assess the validity of the agency's final decision and afford [a claimant] meaningful review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595)); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

## DISABILITY STANDARD

To be eligible for disability benefits, a claimant must establish that she suffers from a "disability" as defined by the Social Security Act and regulations. The Act defines "disability" as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). To be found disabled, the claimant's impairment must not only prevent her from doing her previous work, but considering her age, education, and work experience, it must also prevent her from engaging in any other type of substantial gainful activity that exists in significant numbers in the economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); 20 C.F.R. § 404.1520(e)-(f).

When a claimant alleges a disability, Social Security regulations provide a five-step inquiry to evaluate whether the claimant is entitled to benefits. 20 C.F.R. § 404.1520(a)(4). The steps are: (1) Is the claimant engaged in substantial gainful activity? If yes, the claimant is not disabled, and the claim is denied; if no, the inquiry proceeds to step two; (2) Does the claimant have an impairment or combination of impairments that are severe? If not, the claimant is not disabled, and

the claim is denied; if yes, the inquiry proceeds to step three; (3) Do(es) the impairment(s) meet or equal a listed impairment in the appendix to the regulations? If yes, the claimant is automatically considered disabled; if not, then the inquiry proceeds to step four; (4) Can the claimant do the claimant's past relevant work? If yes, the claimant is not disabled, and the claim is denied; if no, then the inquiry proceeds to step five; (5) Can the claimant perform other work given the claimant's residual functioning capacity ("RFC"), age, education, and experience? If yes, then the claimant is not disabled, and the claim is denied; if no, the claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i)-(v); *see also Scheck v. Barnhart*, 357 F.3d 697, 699-700 (7th Cir. 2004).

At steps four and five, the ALJ must consider an assessment of the claimant's RFC. The RFC "is an administrative assessment of what work-related activities an individual can perform despite [his] limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001) (citing SSR 96-8p, 1996 WL 374184 (Jul. 2, 1996); 20 C.F.R. § 404.1545(a)) (other citations omitted). The RFC should be based on evidence in the record. *Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(3)). The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski*, 245 F.3d at 886; *see also Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

## ANALYSIS

### A. Credibility

The Plaintiff argues that the ALJ erred when she concluded that the Plaintiff's testimony was not credible based on the kind of treatment received and that the ALJ used impermissible boilerplate language in determining Plaintiff's credibility. The Commissioner argues that the ALJ reasonably found Plaintiff's claims not credible.

6

The ALJ must weigh the claimant's subjective complaints, the relevant objective medical evidence, and any other evidence of the following factors:

> (i) [The claimant's] daily activities;
> (ii) The location, duration, frequency, and intensity of [] pain or other symptoms;
> (iii) Precipitating and aggravating factors;
> (iv) The type, dosage, effectiveness, and side effects of any medication . . . ;
> (v) Treatment . . . for relief of [] pain or other symptoms;
> (vi) Any measures . . . used to relieve []pain or other symptoms . . . ; and
> (vii) Other factors concerning [] functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3). In making a credibility determination, Social Security Ruling 96–7p states that the ALJ must consider the record as a whole, including objective medical evidence, the claimant's statement about symptoms, any statements or other information provided by treating or examining physicians and other persons about the conditions and how they affect the claimant, and any other relevant evidence. *See* SSR 96-7p, 1996 WL 374186 (Jul. 2, 1996). An ALJ is not required to give full credit to every statement of pain made by the claimant or to find a disability each time a claimant states he or she is unable to work. *See Rucker v. Chater*, 92 F.3d 492, 496 (7th Cir. 1996). However, Ruling 96-7p provides that a claimant's statements regarding symptoms or the effect of symptoms on her ability to work "may not be disregarded solely because they are not substantiated by objective evidence." SSR 96-7p at *6. An ALJ's credibility determination is entitled to substantial deference by a reviewing court and will not be overturned unless the claimant can show that the finding is "patently wrong." *Prochaska*, 454 F.3d at 738.

The ALJ did not find the Plaintiff's description of her symptoms credible because she "would expect the claimant to make a greater effort to seek medical attention for her fibromyalgia and diverticulosis if her symptoms were as severe as she testified during the hearing." AR 24. However, the ALJ "must not draw any inferences about an individual's symptoms and their functional effects

from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide" and "may need to recontact the individual or question the individual at the administrative proceeding in order to determine whether there are good reasons the individual does not seek medical treatment or does not pursue treatment in a consistent manner." SSR 96-7p, at *7; *see also Shauger v. Astrue*, 675 F.3d 690, 696 (7th Cir. 2012) ("Although a history of sporadic treatment or the failure to follow a treatment plan can undermine a claimant's credibility, an ALJ must first explore the claimant's reasons for the lack of medical care before drawing a negative inference."); *Craft*, 539 F.3d at 679 ("[T]he ALJ 'must not draw any inferences' about a claimant's condition from this failure [to follow a treatment plan] unless the ALJ has explored the claimant's explanations as to the lack of medical care.") (quoting SSR 96-7p). In this case, the ALJ did not question Plaintiff about her failure to seek other treatments, even though the record indicates that financial constraints kept her from being able to afford certain prescriptions, including preventing her from filing a prescription for Lyrica to treat her fibromyalgia. AR 390. *See e.g., Craft*, 539 F.3d at 679 ("Here, although the ALJ drew a negative inference as to [the plaintiff]'s credibility from his lack of medical care, she neither questioned him about his lack of treatment or medicine noncompliance during that period, nor did she note that a number of medical records reflected that [the plaintiff] had reported an inability to pay for regular treatment and medicine.").

The ALJ found "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms . . . not credible to the extent they are inconsistent with the above residual functional capacity," AR 23, language that Plaintiff argues is impermissibly boilerplate. Regarding this boilerplate language, the Seventh Circuit Court of Appeals has noted

> that the assessment of a claimant's ability to work will often . . . depend heavily on the credibility of her statements concerning the

>"intensity, persistence and limiting effects" of her symptoms, but the passage implies that ability to work is determined first and is then used to determine the claimant's credibility. That gets things backwards. The administrative law judge based his conclusion that [claimant] can do sedentary work on his determination that she was exaggerating the severity of her headaches. Doubts about credibility were thus critical to his assessment of ability to work, yet the boilerplate implies that the determination of credibility is deferred until ability to work is assessed without regard to credibility, even though it often can't be.

*Bjornson v. Astrue*, 671 F.3d 640, 645-46 (7th Cir. 2012). Although the boilerplate language was included in this case, the ALJ addressed Plaintiff's credibility, including the ALJ's consideration of Plaintiff's lack of medical care discussed above. Accordingly, the Court will not remand on the basis of the ALJ's use of the boilerplate language. *See Carter v. Astrue*, 413 F. App'x 899 (7th Cir. 2011) (use of boilerplate language does not necessitate demand when "[t]he ALJ dedicated nearly three pages of her opinion to detailing her adverse credibility finding").

The ALJ improperly relied on Plaintiff's failure to seek treatment to find her less than credible. On remand, the ALJ is directed to fully consider Plaintiff's testimony and the entirety of the record in compliance with the applicable directives. Although not remanded on use of the boilerplate language, the Court suggests the ALJ clearly separate her credibility and RFC analysis.

**B.     Residual Functional Capacity**

Plaintiff argues that the ALJ erred when she did not give significant weight to the treating physician's opinion and that the evidence does not support the RFC found by the ALJ. The Commissioner argues the ALJ fully considered the opinions and that the RFC was based on the medical and non-medical evidence.

The RFC is an assessment of what work-related activities the claimant can perform despite her limitations. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004); *see also* 20 C.F.R. §

9

404.1545(a)(1). In evaluating a claimant's RFC, an ALJ is expected to take into consideration all of the relevant evidence, including both medical and non-medical evidence. *See* 20 C.F.R. § 404.1545(a)(3). According to SSA regulations:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

SSR 96-8p at *7. Although an ALJ is not required to discuss every piece of evidence, she must consider all of the evidence that is relevant to the disability determination and provide enough analysis in her decision to permit meaningful judicial review. *Clifford*, 227 F.3d at 870; *Young*, 362 F.3d at 1002. In other words, the ALJ must build an "accurate and logical bridge from the evidence to his conclusion." *Scott*, 297 F.3d at 595 (quoting *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002)).

The ALJ found that Plaintiff is capable of sedentary work with a number of postural limitations. AR 22. Plaintiff's treating physician Dr. Skarzynski, however, placed significantly more limitations on Plaintiff in two separate opinions. "A treating physician's opinion regarding the nature and severity of a medical condition is entitled to controlling weight if it is well supported by medical findings and not inconsistent with other substantial evidence in the record." *Gudgel*, 345 F.3d at 470 (citing 20 C.F.R. § 404.1527(d)(2)); *see also Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007). Being "not inconsistent" does not require that opinion be supported directly by all of the other

evidence "as long as there is no other substantial evidence in the case record that contradicts or conflicts with the opinion." SSR 96-2p, 1996 WL 374188 at *3. To be "substantial," conflicting evidence "need only be such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (citing *Richardson v. Perales*, 402 U.S. 389 (1971)); *see also Schmidt*, 395 F.3d at 744.

If the ALJ declines to give a treating source's opinion controlling weight, she must still determine what weight to give it according to the following factors: the length, nature, and extent of the physician's treatment relationship with the claimant; whether the physician's opinions were sufficiently supported; how consistent the opinion is with the record as a whole; whether the physician specializes in the medical conditions at issue; and other factors, such as the amount of understanding of the disability programs and their evidentiary requirements or the extent to which an acceptable medical source is familiar with other information in the claimant's case. 20 C.F.R. § 404.1527(c)(2)(i)-(ii), (c)(3)-(6); *see also Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008). "If the ALJ discounts the [treating] physician's opinion after considering these factors, [the Court] must allow that decision to stand so long as the ALJ 'minimally articulated' [her] reasons." *Elder*, 529 F.3d at 415 (quoting *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008)); *see also Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011) ("[W]henever an ALJ does reject a treating source's opinion, a sound explanation must be given for that decision."); *Schmidt*, 496 F.3d at 842 ("An ALJ thus may discount a treating physician's medical opinion if it . . . 'is inconsistent with the opinion of a consulting physician or when the treating physician's opinion is internally inconsistent, as long as he minimally articulates his reasons for crediting or rejecting evidence of disability.'") (quoting *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004)).

Dr. Skarzynski was Plaintiff's treating physician since January 2012. The ALJ did not address the factors enumerated in 20 C.F.R. § 404.1527(c) as they applied to Dr. Skarzynski. The ALJ wrote that Dr. Skarzynski's "assessments are completely inconsistent by the evidence, which shows only conservative treatment for the majority of the claimant's physical impairments and a good recovery from her carpal tunnel release." AR 25. The ALJ also explained that she gave little weight to his opinions because "Dr. Skarzynski's own treatment records are very sparse and do not support his extreme restrictions." *Id*. The ALJ, without any explanation, then continued:

> The undersigned notes that the possibility always exists that a doctor may express an opinion in an effort to assist a patient with whom he or she sympathizes for one reason or another. Another reality with [sic] should be mentioned is that patients can be quite insistent and demanding in seeking supportive notes or reports from their physicians, who might provide such a note in order to satisfy their patients' requests and avoid unnecessary doctor/patient tension. While it is difficult to confirm the presence of motives, they are more likely in situations where the opinion in question departs substantially from the rest of the evidence of the record, as in the current case.

AR 25-26.

The Court recognizes that the treatment records are minimal in this case. Nevertheless, the ALJ does not identify which medical evidence contradicts Dr. Skarzynski's other than "conservative treatment for the majority of the claimant's physical impairments" and a "good recovery from her carpal tunnel release."

The Seventh Circuit has repeatedly held that ALJs are not to make their own independent medical findings. *See, e.g., Myles v. Astrue*, 582 F.3d 672, 677-78 (7th Cir. 2009); *Blakes v. Barnhart*, 331 F.3d 565, 570 (7th Cir. 2003); *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996). Judges have been warned not to "succumb to the temptation to play doctor" because "lay intuitions about medical phenomena are often wrong." *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990)

12

(citing cases). The ALJ may "consider conservative treatment in assessing the severity of a condition," but should cite medical evidence about what kind of treatment would be appropriate. *Brown v. Barnhart*, 298 F. Supp. 2d 773, 797 (E.D. Wis. 2004) (citing *Dominguese v. Massanari*, 172 F. Supp. 2d 1087, 1096 (E.D. Wis. 2001)). Here the ALJ did not cite to medical evidence about what kind of treatment would be appropriate. Further, what medical evidence the ALJ does specifically cite to - the good recovery from her carpal tunnel release on one wrist - does not address the fact that Plaintiff was diagnosed with carpel tunnel in both wrists, nor the numerous other restrictions Dr. Skarzynski placed on Plaintiff.

The ALJ's discrediting of Dr. Skarzynski's opinions concerns the Court because it is not apparent what evidence the ALJ did base the RFC on after dismiss these opinions. The ALJ also gave little weight to Dr. Corcoran's opinion, a consultant for a state agency, but appeared to adopt his conditions with additional, and unexplained, limitations. Further, even though she gave Dr. DeHann's opinion considerable weight, the ALJ found Plaintiff could lift and carry 10 pounds, significantly more than the 3-5 lbs that he opined was appropriate. The ALJ stated that she considered the lower weight limitation temporary since Dr. DeHann later cleared Plaintiff after her carpal tunnel surgery. However, as described above, surgery was only conducted on one of Plaintiff's affected wrists.

Because the ALJ erred in failing to give a sound explanation for her rejection of the treating doctor's opinions and does not explain how she arrived at the RFC, the Court remands the ALJ's RFC determination. The Court remands for the ALJ develop a new RFC and the ALJ is reminded to build a 'logical bridge' from the evidence to her conclusion. *See Suide v. Astrue*, 371 F. App'x 684, 690 (7th Cir. 2010) ("[I]t is the evidentiary deficit left by the ALJ's rejection of his

13

reports—not the decision itself—that is troubling. The rest of the record simply does not support the parameters included in the ALJ's residual functional capacity determination, such as an ability to "stand or walk for six hours" in a typical work day . . ."); *Briscoe v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005) ("[T]he ALJ did not explain how he arrived at these conclusions; this omission in itself is sufficient to warrant reversal of the ALJ's decision."); *Barrett v. Barnhart*, 355 F.3d 1065 (7th Cir.2004) (finding reversible error when ALJ determined that claimant could stand for two hours because there was no medical evidence to support such a conclusion).

## C.  Borderline Age

Plaintiff also argues that the ALJ erred when she mechanically applied the age categories. Commissioner argues the age category was properly applied, the facts and circumstances did not warrant using another age category and the ALJ was not required to use an older age category.

The ALJ is instructed to take a claimant's age into account when determining whether she will be able to work, and the regulations explicitly state that the ALJ may "not apply the age categories mechanically in a borderline age situation." 20 C.F.R. § 404.1563(b). A claimant between the ages of 50 and 54 is considered "closely approaching advanced age," and the ALJ is directed to "consider that [the claimant's] age along with severe impairment(s) and limited work experience may seriously affect [the claimant's] ability to adjust to other work." 20 C.F.R. § 404.1563(d). Although claimants under the age of 50 are generally considered part of the "younger person" age group, "in some circumstances, [the ALJ must] consider that persons age 45-49 are more limited in their ability to adjust to work." 20 C.F.R. § 404.1563(c). The Medical Vocational Guidelines also take a claimant's age into account. 20 C.F.R. § 404, Subpt. P, App. 2.

Plaintiff was 46 years old on the alleged disability onset date and was therefore a younger

individual under the guidelines. However, on the date of the ALJ's decision, Plaintiff was 49 years and six months - six months away from 50 years old when she would be considered "closely approaching advanced age." "Although case law on this issue has not been well-developed in the Seventh Circuit, district courts have reversed and remanded an ALJ's decision where a borderline age situation exists but there is no evidence the ALJ considered the issue." *Zent v. Astrue*, No. 1:10-CV-80, 2010 WL 5231314, at *7 (N.D. Ind. Dec. 16, 2010) (listing cases); *see also Sopko v. Colvin*, No. 12 C 6240, 2013 WL 5497276, at *11 (N.D. Ill. Oct. 3, 2013) ("[L]ike many other district courts in this circuit, we conclude that the ALJ's failure to acknowledge whether he considered claimant's borderline age situation or otherwise explain his age category determination requires remand." (citing cases)). There is no way for the Court to trace the ALJ's reasoning to determine if she applied the age categories mechanically or appropriately "consider[ed] whether to use the older age category after evaluating the overall impact of all the factors of [Plaintiff's] case." 20 C.F.R. § 404.1563(b); *see also Anderson v. Astrue*, No. 09 C 2399, 2011 WL 2416265, at *14 (N.D. Ill. June 13, 2011) ("The ALJ must, at a minimum, acknowledge that he considered the borderline-age issue non-mechanically, and doing so likely requires some explanation, however brief, of the conclusion he reached."). The Court also "reject[s] the Commissioner's assertion that this case does not involve a borderline situation. Where, as here, claimant was approximately six months away from the next age category at the time of the ALJ's hearing and decision, case law dictates that a borderline situation may in fact exist." *Sopko* 2013 WL 5497276, at *11 (N.D. Ill. Oct. 3, 2013) (citing cases). On remand, the ALJ need not automatically re-classify Plaintiff as an "individual closely approaching advanced age," but must consider whether re-classification is appropriate and give enough explanation of her reasoning to permit review.

15

**D.     VE Testimony**

Plaintiff argues that the ALJ erred when she accepted the VE's testimony that diverged from the DOT. The Commissioner argues that the ALJ properly relied on the VE's experience and Plaintiff did not cross-examine the VE regarding the issue at the hearing, which waived the argument.

At the hearing, the VE testified that a hypothetical individual with the RFC adopted by the ALJ could perform the jobs of surveillance system monitor, telephone information clerk, and gate guard, even though a telephone information clerk was semi-skilled per the DOT and the gate guard was light exertional level and semi-skilled, making both positions in conflict with the RFC adopted by the ALJ. The VE testified that in his experience unskilled and non-exertional versions of these positions were available, without any further evidence, and the ALJ apparently accepted this explanation without any additional questioning.

In this case, new VE testimony will likely be required after the credibility and RFC determinations are corrected as described above, so the Court need not directly address Plaintiff's arguments. However, the Court notes "[a]t minimum, a vocational expert relying on personal experience, without any citation of objective reports or documents, must provide some specificity concerning the facts, figures, or other data that form the basis of his testimony." *Smith v. Astrue*, No. 09 C 2392, 2010 WL 3526655, at *17 (N.D. Ill. Sept. 1, 2010). The Court is concerned with another component of the VE's testimony. Recently, the Seventh Circuit Court of Appeals has questioned the appropriateness of relying on "job descriptions used by the Social Security Administration come from a 23-year-old edition of the Dictionary of Occupational Titles, which is no longer published, and mainly moreover from information from 1977 – 37 years ago." *Browning v. Colvin*, 766 F.3d

702, 709 (7th Cir. 2014). Additionally, the *Browning* court expressed concern, particularly relevant in this case where it is not clear how the VE got the non-skilled and non-exertional job numbers, that "[t]here is no official source of number of jobs for each job classification in the Dictionary of Occupational Titles . . . [a]nd many of the[ VEs] estimate the number of jobs of a type the applicant for benefits can perform by the unacceptably crude method of dividing the number of jobs in some large category (which may be the only available data) by the number of job classifications in the category." *Id.* Accordingly, on remand, the ALJ is reminded to inquire into the VE's departure form the DOT and explain his rationale for accepting the deviation and inquire into the source of the VE's job numbers.

**E.    Remedy**

Plaintiff requests that the Court reverse the Commissioner's decision and remand for an award of benefits. An award of benefits is appropriate "only if all factual issues have been resolved and the record supports a finding of disability." *Briscoe*, 425 F.3d at 356. In this case, the ALJ failed to develop the record and draw a logical bridge from the evidence to her conclusions. Additionally, although Plaintiff requests an award of benefits, she fails to present a developed argument in favor of doing so. The ALJ must review the record in accordance with the regulations and fully explain how all of Plaintiff's limitations are incorporated into the RFC. These are issues that can only be resolved through further proceedings on remand. Accordingly, this matter is remanded for further proceedings.

## CONCLUSION

For the foregoing reasons, the Court hereby **GRANTS** the relief requested in Plaintiff's Brief in Support of Reversing the Decision of the Commissioner of Social Security [DE 27] and

**REMANDS** this matter for further proceedings consistent with this opinion. However, the Court

**DENIES** Plaintiff's request to award benefits.

SO ORDERED this 27th day of February, 2015.

s/ John E. Martin  
MAGISTRATE JUDGE JOHN E. MARTIN  
UNITED STATES DISTRICT COURT

cc: All counsel of record